Edith L. HOUGH, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 14923, 14924.

United States Court of Appeals District of Columbia Circuit.

Argued April 8, 1959.

Decided Sept. 14, 1959.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

Wilbur K. Miller, Circuit Judge, dissented in part.

———◆———

Mr. Frank J. Whalen, Jr., Washington, D. C., with whom Messrs. Samuel Spencer and Donald K. Graham, Washington, D. C., were on the brief, for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., was on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

These appeals involve construction of those provisions of the D.C.Code requiring persons acquitted of crimes by reason of insanity to be confined in a mental hospital and prescribing the conditions and procedure for their release.

Appellant was indicted on June 17, 1957, for a murder committed in circumstances strongly suggesting that she was mentally ill. The next day she was ordered to St. Elizabeths Hospital for determination of her competency to stand trial. After a two-month period she was found incompetent and was committed to the hospital until restoration of her competency. On May 23, 1958, she was found competent to stand trial but was ordered to remain in the hospital until the trial. The trial, held on July 10, 1958, culminated in a judgment of acquittal by reason of insanity and appellant was committed to St. Elizabeths Hospital as required by D.C.Code § 24–301(d) (Supp. VII, 1959). She had then been under treatment at the hospital for more than a year.

On October 20, 1958, when appellant had been under treatment for about sixteen months, the Superintendent of St. Elizabeths Hospital filed in the District Court a certificate stating in pertinent part:

"Miss Hough has now recovered sufficiently to be granted her conditional release from Saint Elizabeths Hospital pursuant to section 927(e) of Public Law 313.

"The plan under which we recommend that the conditional release be granted is that in accordance with the continuation of a total plan of rehabilitation Miss Hough be permitted to leave Saint Elizabeths Hospital to go to the city of Washington, D. C., unaccompanied in an effort to obtain employment. It is recommended that this plan be carried out under very close hospital supervision and that she be subject at all times during the period of her conditional release to the supervision of the Social Service Department of Saint Elizabeths Hospital and that she report to Saint Elizabeths Hospital for examinations at such times as are designated by the authorities of Saint Elizabeths Hospital."

Release of persons who have been committed to a mental hospital after acquittal by reason of insanity is governed by D.C.Code § 24–301(e) (Supp. VII, 1959). *Unconditional* release is authorized fifteen days after certification by the hospital superintendent "(1) that such person has recovered his sanity, (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others, and (3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital * * *." But upon objection by the prosecutor's office, the court is required to—or, upon its own initiative, may—hold a hearing and determine from evidence presented therein whether "such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others * * *."

*Conditional* release is authorized upon the certificate of the superintendent that the individual "is not in such condition as to warrant his *unconditional* release, but is in a condition to be *conditionally* released under supervision * * *." (Emphasis supplied.) For "such certificate" the procedural hearing provisions for unconditional release are applicable: "* * * and, if, after a hearing and weighing the evidence, the court shall find that the condition of such person warrants his conditional release, the court shall order his release *under such conditions as the court shall see fit*, or, if the court does not so find, the court shall order such person returned to such hospital." (Emphasis supplied.)

The release here proposed for appellant was a conditional release. The United States Attorney objected to it and the District Court held a hearing. Testifying at the hearing in support of his proposal to release appellant conditionally, Dr. Overholser, the Superintendent of St. Elizabeths Hospital, stated that he would require appellant to report to the hospital once a week under a plan of close supervision and treatment. To show that she had demonstrated her readiness for release under such conditions without danger to the community, the doctor cited the hospital's successful experience with appellant in a treatment and rehabilitation program under which appellant had been allowed to leave the hospital grounds for several hours a day, accompanied only by her seventy-five-year old mother, returning every evening; that as appellant improved this was allowed with increasing frequency until after October 15, 1958, appellant was away from the hospital grounds under similar circumstances almost every day; that, in the opinion of the hospital authorities, she had progressed sufficiently to do this without danger to the community.

The District Court denied conditional release by order of December 12, 1958. The court also invited the United States Attorney to seek modification of the commitment order to require that appellant be restricted to the hospital grounds, or, if outside the hospital grounds, in the custody or company of a hospital attendant until such time as the court orders the conditional release of appellant.

Subsequently, upon motion of the United States Attorney, these restrictions were imposed by the court's order of December 23, 1958.

In appeal No. 14923, which we discuss first, appellant seeks review of the order of December 12, 1958, denying conditional release. Her points are (1) that the order is contrary to the weight of the evidence and (2) that the court below erred in its interpretation of the statute with respect to the standard to be applied for conditional release.

This is the first appeal involving construction of the conditional release provisions of § 24–301(e). Overholser v. Leach, 1958, 103 U.S.App.D.C. 289, 257 F.2d 667, 669, a habeas corpus proceeding, involved construction of the finding required for *unconditional* release: "that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others  *  *  *." There we rejected the contention that recovery of sanity was sufficient for release. We construed the statute to require "freedom from such abnormal mental conditions as would make the individual dangerous to himself or the community in the reasonably foreseeable future."

█ But for conditional release the statute is less specific: It requires the court to "find that the condition of such person warrants his conditional release,  *  *  *" whereupon he shall order his release "under such conditions as the court shall see fit [to impose]  *  *  *."[1] We must construe this provision in light of the basic policy underlying the statute. That policy, as we read the legislative history, is to provide treatment and cure for the individual in a manner which affords reasonable assurance for the public safety. Accordingly, we think that to order conditional release upon a challenged certification the court must conclude that the individual has recovered sufficiently so that under the proposed conditions—or under conditions which the statute empowers the court to impose "as [it] shall see fit,"[2]—"such person will not in the reasonable future be dangerous to himself or others." This gives effect to the legislative distinction between conditional and unconditional release without diluting the statute's grant of judicial power to protect the public safety.

In an oral opinion denying conditional release in this case, the District Court cited the agreement of the psychiatrists that appellant was still suffering from schizophrenia of the paranoid type, the seriousness of her offense, the doctors' testimony that she lacked insight concerning the seriousness of the offense, the short period which had elapsed since her trial, and the need of punishment for crime. The court also filed formal findings of fact and conclusions of law. It found that appellant had not recovered her sanity and that "it has not been shown that [she] will not in the reasonable future be dangerous to herself or others." The conclusions of law stated that "it has not been shown by a preponderance of the evidence that [appellant] should be released conditionally  *  *  *; that the Government has shown by a preponderance of the evidence that [she] should not  *  *  *."

█ We cannot discern from either the court's oral opinion or its findings of fact and conclusions of law what distinction, if any, it drew between the statutory requirements for conditional release and those for unconditional release. The District Court did not have the benefit of our present construction of the statute, made now for the first time. Sound judicial administration dictates that we refrain from review of the evidence and allow the trial court to evaluate it in the first instance in light of the principles we now hold applicable. Accordingly we reverse the appealed order in No. 14923 and remand the case to the District Court with directions to afford the parties an opportunity to re-

---

1. D.C.Code § 24–301(e) (Supp. VII, 1959).

2. Clearly the court is not bound to an all-or-nothing acceptance or rejection of the conditions recommended by the hospital superintendent.

consider the case in the light of this opinion, with leave to supplement the record if the court or the parties are so advised.

Appeal No. 14924 is from the District Court's order of December 23, 1958, and presents the question whether an individual who has been committed to a mental hospital after acquittal of a crime by reason of insanity may, without judicial approval, be permitted by the hospital authorities to leave the hospital grounds without a guard or attendant.

Dr. Overholser, the Superintendent of St. Elizabeths Hospital, testified that a course of periodic absences from the hospital without a guard or attendant is a necessary step in the process of rehabilitating the patient so that he can be restored to his place in the community without danger to himself or others. The District Court, on the other hand, suggested that an individual under such a commitment is supposed to be "a prisoner."

The statute under which appellant was committed is silent as to the conditions of confinement or treatment. It provides no specific test whereby one can determine whether rehabilitative therapy, which is clearly the province of the hospital alone, amounts to conditional release, which is the province of the court as well. So here, as with the criteria for conditional release, we must interpret the general language used in light of the legislative purpose.

In the light of that purpose, we must reject the District Court's suggestion that appellant is a "prisoner." Nothing in the history of the statute—and nothing in its language—indicates that an individual committed to a mental hospital after acquittal of a crime by reason of insanity is other than a patient. The individual is confined in the hospital for the purpose of treatment, not punishment; and the length of confinement is governed solely by considerations of his condition and the public safety. Any preoccupation by the District Court with the need of punishment for crime is out of place in dealing with an individual who has been acquitted of the crime charged.

It does not follow, however, that the hospital authorities are free to allow such a patient to leave the hospital without supervision. We readily grant that periodic freedom may be valuable therapy. So, we suppose, may outright release sometimes be. But the statute makes one in appellant's situation a member of "an exceptional class of people." Overholser v. Leach, supra, 103 U.S.App.D.C. at page 291, 257 F.2d at page 669. It provides, generally, that the District Court have a voice in any termination of her confinement, whether unconditional or conditional.

■■ Although the statute does not speak of temporary leaves from the hospital, its purpose, as we read it, is to assure that members of the "exceptional class" to which appellant belongs be kept under hospital restraint until the District Court, in the exercise of a discretion, reviewable by this Court, approves a relaxation of that restraint. We read "conditional release" as used in the present statute to include the kind of temporary freedom which has been given this appellant. We do not, of course, lose sight of the hospital's view that such temporary freedom is often an essential part of the therapeutic process and, therefore, must not be prevented. But calling it a conditional release does not prevent it. It simply requires the hospital authorities, when they decide that a patient has reached the stage where such freedom is necessary and proper, to certify that fact to the District Court and obtain an appropriate order, reviewable by this Court. It should not be anticipated that the District Court would arbitrarily prevent the hospital authorities from utilizing temporary leaves for therapy in proper cases. The court would simply fulfill its statutory role by deciding whether or not the evidence supports the hospital's determination that in all reasonable likelihood the patient's temporary absence from the hospital under specified conditions will not endanger others.

The order of December 23, 1958, appealed from in No. 14924 is accordingly affirmed.

No. 14923 is reversed and remanded for further proceedings as directed in this opinion.

No. 14924 is affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting in No. 14,923 and concurring in the result in No. 14,924).

On May 30, 1957, Zurab Abdusheli called on the appellant, Edith L. Hough, at her apartment in The Woodner, a large apartment hotel in the District of Columbia, to express his sympathy over the recent death of her father. She said later that Abdusheli became "psychologically aggressive," so she wrapped her pistol in a towel and shot him several times. As he lay moaning on the day bed where he had fallen, the appellant placed the pistol close to his temple and shot again, "to put him out of his misery." Then she telephoned the police. In due course, she was indicted for first degree murder.

Immediately after the killing, the appellant was committed to St. Elizabeths Hospital, a Government mental institution, where she was observed and treated. On May 23, 1958, the hospital authorities certified she was able to understand the nature of the charge against her, and to assist in her own defense. Accordingly she was tried on July 10, 1958, by a judge of the United States District Court and was found not guilty by reason of insanity. Thereupon, pursuant to § 24–301(d), D.C.Code (1951), the court ordered her to be confined in a hospital for the mentally ill. Her malady was diagnosed as high grade schizophrenia, paranoid type—a condition which was present before and during the trial and which, according to all the psychiatrists, still exists.

In spite of this, in the month following her trial the St. Elizabeths authorities began to permit the appellant to leave the hospital about three times a week and spend the day in Washington, unescorted by any hospital attendant and accompanied only by her 75-year-old mother. Probably encouraged by the fact that no untoward incident occurred during these periods of unauthorized releases,[1] Dr. Overholser, the Superintendent of St. Elizabeths Hospital, certified to the District Court on October 20, 1958:

"Miss Hough has now recovered sufficiently to be granted her conditional release from Saint Elizabeths Hospital pursuant to section 927(e) of Public Law 313 [§ 24–301(e), D. C.Code (1951)].

"The plan under which we recommend that the conditional release be granted is that in accordance with the continuation of a total plan of rehabilitation Miss Hough be permitted to leave Saint Elizabeths Hospital to go to the city of Washington, D. C., unaccompanied in an effort to obtain employment. * * * * "[2]

The United States Attorney objected to the proposed conditional release, whereupon District Judge Alexander Holtzoff conducted an evidentiary hearing, after which on December 12, 1958, he entered an order denying conditional release. Miss Hough's appeal from that order bears our No. 14,923. On December 23, 1958, pursuant to the Government's motion and after a hearing thereon, the District Court:

"ORDERED that in view of the provisions of 24 D.C.Code 301(d) and 301(e) the Superintendent of St. Elizabeths Hospital is directed not to permit the defendant, Edith L. Hough, to leave the grounds of St.

---

1. I think that in permitting the appellant to make these unescorted visits to Washington, the St. Elizabeths authorities took it on themselves to grant conditional releases without consulting the court.

2. Dr. Overholser did not certify that the appellant had not regained her sanity, as the statute requires that he do in such a statement. But in his testimony he stated he considered her still to be suffering from schizophrenia, paranoid type, as I shall show.

Elizabeths Hospital except in the custody of an attendant employed by the said Hospital until such time as this Court may order the conditional release of Edith L. Hough."

Miss Hough's appeal from this order is our No. 14,924.

*No. 14,923.* The majority say:

"We cannot discern from either the court's oral opinion or its findings of fact and conclusions of law what distinction, if any, it drew between the statutory requirements for conditional release and those for unconditional release. The District Court did not have the benefit of our present construction of the statute, made now for the first time. * * * "3

For that reason they reverse the order denying conditional release and, as they put it, "remand the case to the District Court with directions to afford the parties an opportunity to reconsider the case in the light of this opinion, with leave to supplement the record if so advised."

I dissent from this reversal and remand because I think the order of denial was justified and indeed required by the evidence. It seems to me the District Judge demonstrated that he was quite familiar with the statute, which after all is not difficult to understand, and that he employed the correct standards in reaching his decision. I am unable to understand what purpose will be served by reversal and remand for the parties to reconsider and perhaps introduce additional proof. Nor do I see how the

majority opinion could have been of any benefit to the District Judge had it been before him when he heard the motion, or how it could help him when the parties reconsider after remand and introduce additional evidence. The issue will remain the same: whether this admittedly insane woman will in the reasonable future be dangerous to herself or others if released from confinement, subject only to reporting for occasional interviews.

In order to show how simple the statute is, I shall examine it; and then discuss Judge Holtzoff's application of it, which I think was clearly correct. His conclusions of law decided only the legal issue which was before him, and his opinion and findings show his factual determinations were pertinent to that decision.

A person confined in a hospital for the mentally ill, pursuant to § 24–301(d), D. C.Code (1951), may be released either unconditionally or conditionally. The two forms of release and the procedure to be followed with respect to them are set forth in § 24–301(e). If the superintendent of the hospital certifies to the court (1) that the confined person has recovered his sanity, and (2) that, in the superintendent's opinion he will not in the reasonable future be dangerous to himself or others,[4] such certificate authorizes the court to order unconditional release; but the court may, and on objection by the United States Attorney or the District of Columbia shall, hold a hearing and determine whether, under the two criteria, the confined person shall be unconditionally released.

---

3. I see nothing in the majority opinion which does any more than point out that to grant unconditional release the court must find that the confined person has recovered his sanity and will not in the reasonable future be dangerous to himself or others; and that to grant conditional release the court must find that, although the person has not recovered his sanity, he will not in the reasonable future be dangerous to himself or others. This distinction, although stated now in express terms for the first time, is readily seen from the statute and I am sure the District Court was fully aware of

it. His decision was quite consistent with that construction of the statute, which is easily derived from the somewhat inapt language in which the conditional release provision is couched.

4. The statute adds a third factor which must be certified by the superintendent: that "(3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital * * *." This is surplusage, as it must follow automatically if the first two factors are certified by the superintendent.

With respect to conditional release, the statute provides that, where the superintendent certifies to the court that in his judgment the confined person "is not in such condition as to warrant his unconditional release, but is in a condition to be conditionally released under supervision," the court is authorized to order the person's release under conditions which it provides. But, as in the case of unconditional release, the court may, and on objection by the United States Attorney or the District of Columbia shall, hold a hearing and determine therefrom whether the confined person, who according to the superintendent has not recovered his sanity, is in a condition to be conditionally released under supervision.

It seems clear to me that a confined insane person "is in a condition to be conditionally released under supervision" only when he will not in the reasonable future be dangerous to himself or others. In deciding this it is of course important for the court to know what sort of supervision is proposed. In the present case, there is no suggestion of any physical restraint, supervision or control; the only supervision suggested by the superintendent is that the patient report perhaps once a week for an interview. Otherwise she is to be entirely on her own, free of any sort of actual day-to-day supervision by hospital authorities and attendants.

Obviously, conditional release is more difficult to justify than is unconditional release. For, with respect to conditional release, the certificate is that the confined person is still insane, but that the superintendent thinks it would be safe to release him under supervision. It is, of course, much easier to believe that a sane person will not in the reasonable future be dangerous to himself or others than to believe that an insane person will not be. The court should be even more careful in examining the evidence as to the danger involved in conditional release of an insane person, than with respect to the unconditional release of a person who has recovered his sanity.

So, I think that, in considering whether to grant conditional release, i. e., whether the confined insane person will not in the reasonable future be dangerous to himself or others, the court should not only take into consideration the fact that the confined person is still insane, but should also be fully advised as to the nature, intensity and probable duration of the mental illness, since those factors should be considered in determining whether the confined person may be dangerous to himself or others if released with only occasional interviews thereafter.

With regard to at least part of what I have said on the subject of conditional release the majority agree, for they say:

> " * * * Accordingly, we think that to order conditional release upon a challenged certification the court must conclude that the individual has recovered sufficiently so that under the proposed conditions * * * 'such person will not in the reasonable future be dangerous to himself or others.' * * * "

But they do not mention the fact of continued insanity, and the importance of that fact in the consideration of conditional release which I have just suggested.

On the contrary, my brothers are rather critical of the District Judge's opinion, findings and conclusions, which they summarize as follows:

> "In an oral opinion denying conditional release in this case, the District Court cited the agreement of the psychiatrists that appellant was still suffering from schizophrenia of the paranoid type, the seriousness of her offense, the doctors' testimony that she lacked insight concerning the seriousness of the offense, the short period which had elapsed since her trial, and the need of punishment for crime.[5] * * * It [the

---

5. The judge's comment, "need of punishment for crime," had no part in the decisional process. He expressly said "it is not the matter that governs the Court's conclusion in denying the request for the defendant's release."

court] found that appellant had not recovered her sanity and that 'it has not been shown that [she] will not in the reasonable future be dangerous to herself or others.' The conclusions of law stated that 'it has not been shown by a preponderance of the evidence that [appellant] should be released conditionally * * *; that the Government has shown by a preponderance of the evidence that [she] should not * * *.'"

As I have pointed out, the majority say they cannot discern from the oral opinion, findings and conclusions thus summarized how the court distinguished between the statutory requirements for the two forms of release.[6]

I suppose the implication is that the summary indicates the District Judge may have used in this case some standard which applies only to unconditional release. An analysis of the opinion, findings and conclusions shows the majority's fear to be unfounded. He did not have before him and so did not consider the question whether Miss Hough had recovered her sanity. That was not the problem, as it would have been on an application for unconditional release. But the admitted fact that she was still insane was properly before the judge, because the statute requires that it be certified to him.

No doubt the statute so requires because, in considering conditional release, the judge should know the type of insanity from which the confined person suffers, and the seriousness of the crime which it caused. This is so because the mental condition and the form of violence which resulted from it bear on the question whether danger in the reasonable future should be anticipated if release were granted. In like manner, the fact that doctors said she lacks insight concerning the seriousness of her crime was properly pointed out because that fact illustrates the intensity and permanence of her mental malady and sheds light on the question whether she is still potentially dangerous to herself or others. The short period which had elapsed since her trial lessened the possibility—if there were any—that she had sufficiently recovered from her paranoid schizophrenia to be safely liberated.

I note also that there was an express finding that "it has not been shown that [she] will not in the reasonable future be dangerous to herself or others," and that the Government had shown by a preponderance of the evidence that she should not be conditionally released. This finding was that upon which decision turned; but it flowed from, or at least was in part based upon, the previous statements made in the court's oral opinion, findings and conclusions, a portion of which I reproduce in the margin.[7]

---

6. Of course the District Court was not called on to make such a distinction, but only to decide whether the evidence satisfied the statutory requirements for conditional release.

7. "THE COURT: This case is before the Court on a certificate of the Superintendent of St. Elizabeths Hospital to the effect that the defendant, who has been acquitted on the ground of insanity of the crime of murder in the first degree, may be permitted to be released on a conditional release as provided by Section 24–301 of the District of Columbia Code. The Government has filed objections to the proposed release.

"The statute contemplates a divided responsibility in such matters as between the Superintendent of the mental institution in which the acquitted defendant is confined and the Court, and the statute provides that the Court may hear and weigh the evidence.

"The matter that must concern the Court more than anything else is the safety of the community in case the defendant is released. The type of crime which she committed must be considered in that connection. For example, there is less danger to the community if an embezzler should be released and repeats the crime of embezzlement than if a murderer is released and possibly repeats a crime of that type. Therefore the Court is of the opinion that greater caution must be exercised in releasing a person in a murder case than in a case of a nonviolent crime.

As I have said, Dr. Overholser did not certify, as he should have done, that the appellant is still insane. That he was of that opinion, however, clearly appears from his testimony, a pertinent part of which appears in the margin.[8] These excerpts also show that, although Dr. Overholser had proposed conditional re-

"All the psychiatrists agree that the defendant was suffering from schizophrenia of the paranoid type, and also that she is still afflicted with this disease. Dr. Karpman testified that persons suffering from schizophrenia rarely recover, and that every person suffering from paranoid schizophrenia, especially of the aggressive type, is potentially dangerous.

"She feels, according to all the doctors, that what she did was excusable or justifiable. In other words, she has no insight into her crime. There is no dispute over the fact that she has no normal emotional reaction or feeling about her crime.

"In view of all of the evidence, especially the testimony of Dr. Guttmacher and Dr. Karpman, the Court is of the opinion that it has not been established by a preponderance of evidence that the defendant should be conditionally released and that it would be safe to release her so far as the community is concerned.

"There is another circumstance to which the Court wishes to advert, *although it is not the matter that governs the Court's conclusion in denying the request for defendant's release,* [My emphasis.] The defendant was tried last July for a coldblooded, horrible murder. She was acquitted on the ground of insanity. There is no doubt that the murder was committed. And now, three or four months later, she requests to be released from the institution. The Court feels that in the case of a person who is acquitted on the ground of insanity of a type that is of long duration and not a mere temporary flare-up, to release a person of that kind within a few months would be to make of this procedure a route to escape punishment for a serious crime. * * * "

Excerpt from findings of fact:

"7. Based upon the testimony in open Court of the following witnesses [listing the six psychiatrists who testified] the Court finds that the defendant, Edith L. Hough, has not recovered her sanity.

"8. Based upon the foregoing the Court also finds that it has not been shown that the defendant, Edith L. Hough, will not in the reasonable future be dangerous to herself or others.

"Conclusions of Law

"Upon consideration of the foregoing Findings of Fact, the Court concludes:

"1. That under 24 D.C.Code 301(e), as amended August 9, 1955, it has not been shown by a preponderance of the evidence that the defendant, Edith L. Hough, should be released conditionally from confinement at St. Elizabeths Hospital pursuant to order of this Court entered July 10, 1958;

"2. The Government has shown by a preponderance of the evidence that Edith L. Hough should not be released conditionally pursuant to 24 D.C.Code 301 (e), as amended August 9, 1955."

8. Except from Dr. Overholser's testimony:

"Q. And after the verdict, when you had occasion to examine her, was your opinion the same; namely, she was suffering from a major mental disease? A. Yes, although she had shown considerable improvement as far as her adjustment to the other patients on the ward, for example, was concerned.

"Q. What symptoms did she evidence in June of '57, if I might go back for a moment to that first time you saw her? A. One of the features that was rather striking, I think, was that she saw nothing unusual in what she had done. She saw no reason why your office, Mr. Flannery [the Assistant U. S. Attorney], should have done anything about it, should have obtained an indictment, or why the police should have made any arrest.

"Q. And is it not a fact also that she didn't think that she should have even been charged? A. Yes, that is correct. She showed a general aloofness, I may say, too. She stayed pretty much away from the other patients; stayed by herself pretty much.

　　*　　　*　　　*　　　*　　　*

"Q. Now then, would you say that this unusual attitude she had about the act she had committed was due to the fact she was mentally ill? A. I take it so in this case, yes.

"Q. Now, as of this moment, doesn't she still feel that she did no wrong in killing the deceased in this case? A. I think so.

"Q. So she hasn't changed in that regard? A. In that regard, no. Her behavior has changed considerably, of course, for the better.

"Q. Up until this moment, has she shown any remorse for having killed Zurab Abdusheli? A. I can't say that I had gone into it enough for that. I assume it would follow there wouldn't be much remorse if she thought she had done nothing wrong.

lease, he was not convincing in his effort to justify it.

The testimony of Dr. Karpman was particularly illuminating. He had been a friend and associate of appellant's deceased father (who had also been a psychiatrist) and had known and observed Miss Hough for many years. Because he was a family friend, he was a reluctant witness. As early as 1945, Dr. Karpman had been apprehensive as to what might happen. He said:

"I urged the father to hospitalize her; and of course he wouldn't do it. I predicted, I told him personally, that we never can tell what measures or what a person of this type of psychosis might do. It may be something very drastic. But I didn't think of murder, because I am not an astrologer and I couldn't predict in advance; but I said something drastic might happen.

"Q. You thought she had a psychosis at that time? A. Yes.

"Q. What psychosis? A. Paranoid schizophrenia.

\* \* \* \* \* \*

"Q. And doesn't she still feel today that she was justified in doing what she did and that she was protecting her soul? A. I believe she has made that statement—not to me.

"Q. And today she still can't understand why criminal charges were placed against her in this case, can she? A. I think, from what she said, that is her general attitude, yes.

"Q. She can't exercise objective reasoning in regard to that, can she? A. I suppose not. Many people have difficulty in objective reasoning.

\* \* \* \* \*

"Q. Now, doctor, the present diagnosis is schizophrenic reaction, paranoid type; is it not? A. That is correct.

"Q. So the diagnosis hasn't changed from what it was originally? A. That's right.

"Q. In other words, she is still suffering from a major mental disease known as schizophrenia, paranoid type? A. Yes.

"Q. However, although she still has a major mental disease, you have certified that she should have a conditional release? A. I have.

"Q. Very well, now if she were given a conditional release, what protection

"Q. In your opinion is Edith L. Hough the aggressive type of paranoid? A. Yes, she is the aggressive type—as evidenced by the fact that she took measures of her own in killing the man. That is aggressiveness.

"Q. In your opinion is an agressive paranoid potentially dangerous? A. It is conceded universally an aggressive paranoid is dangerous. I would even say that universally we think that any paranoid schizophrenic is potentially dangerous, because one can never tell when the meekness and submissiveness may suddenly turn around and become aggressive.

"Q. Would you say Edith L. Hough at this time is potentially dangerous because she has schizophrenia, paranoid type? A. I would rather not answer this question directly. Ask me whether a paranoid schizophrenic is potentially dangerous, and I would say yes.

"Q. You would say yes? A. Yes.

would be afforded to the public under your plan, if you do have a plan? A. Yes, we do have a plan to keep in touch with her through our social service, to have her return to the hospital at fairly frequent intervals for interview, but it seems to me, at this stage of the proceedings, she has had enough opportunity that we have given her to show that she is no substantial menace to the community.

"Q. And you say that despite the fact that just less than 18 months ago she killed someone under very violent circumstances? A. Yes, and under great stress. Other factors were involved as well as the man; the fact her father had just died and so on.

"Q. Now, if this woman, who has this major mental disease, were released conditionally into the community and met a great number of frustrations in adjusting herself in getting along. isn't there a probability or possibility that she might explode, so to speak, and even do harm to herself or to others? A. Well, there is that possibility with a great many people, some of whom have never been in mental hospitals. I can't make any guarantee about permanence, or even about the conduct."

"Q. A paranoid schizophrenic is potentially dangerous? A. Is potentially dangerous.

"Q. And you know that the hospital diagnosis in this case is that she at the present time is a schizophrenia, paranoid type? A. Well, that is about the same thing."

This woman is suffering from schizophrenia of the paranoid type. That she is aggressive, as testified to by Dr. Karpman, is readily apparent from her action in coolly killing her caller. She fell far short of showing she is entitled to conditional release. The Government showed, rather conclusively I think, that her condition is such that she might well harm herself or others were she released and permitted to go about without restraint. I think the District Judge was fully justified in refusing to grant conditional release, and that he understood and accurately applied the statute when he did so. Accordingly, I would affirm his order.

*No. 14,924.* In the portion of their opinion which deals with the second of the two appeals, my brothers affirm the order which directed Dr. Overholser not to permit the appellant to leave the St. Elizabeths grounds except in the custody of a hospital attendant. I concur in that result.

Bazelon, Circuit Judge, dissented.