**Basil DARNELL, Appellant,**

v.

**Dale C. CAMERON, Superintendent, St. Elizabeths Hospital.**

**No. 19043.**

United States Court of Appeals District of Columbia Circuit.

Argued April 9, 1965.

Decided May 28, 1965.

Messrs. Lawrence A. Hymo and Akin T. Davis (both appointed by the District Court), Washington, D. C., for appellant.

Mr. Gerald E. Gilbert, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Max Frescoln, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and WRIGHT, Circuit Judges.

BAZELON, Chief Judge:

Appellant is presently confined in St. Elizabeths Hospital. He appeals the District Court's dismissal of his petition for habeas corpus. At a hearing below, the court found the following facts. In 1959, appellant was charged in the District of Columbia Court of General Sessions with indecent exposure, found not guilty by reason of insanity and committed to St. Elizabeths Hospital under the mandatory provisions of D.C.Code § 24–301(d). In 1961, the Court of General Sessions approved appellant's conditional release, at the hospital's recommendation, permitting appellant to "live in the city, reporting to the hospital for [periodic] examination * * *." In February, 1963, appellant was arrested in Arlington, Virginia, on an indecent exposure charge. Although appellant was never tried on that charge, the hospital superintendent averred that "after a lengthy discussion with a detective of the Arlington County Police Department, it was agreed that we would accept [appellant] if he was returned to this hospital. He was subsequently returned to our custody." The hospital made no application at that time to the Court of General Sessions for revocation of appellant's conditional release. In May, 1963, appellant escaped from the hospital and he was returned in October, 1963.

On September 29, 1964, this petition for habeas corpus was filed in the District Court. On October 8, 1964, the hospital requested the Court of General Sessions to revoke appellant's conditional release because of the May, 1963 "unau-

thorized leave from the hospital." This request did not mention appellant's Arlington arrest or explain the reason that appellant was in the hospital's custody in May, 1963.[1] On October 21, 1964, the Court of General Sessions revoked the conditional release on the ground that appellant "left Saint Elizabeths Hospital without authorization" in May, 1963. This revocation was granted without a hearing and without the presence of appellant or his counsel. Appellant's counsel in this appeal says that no notice was given regarding this revocation proceeding, and that he discovered the revocation order only while inspecting the Court of General Sessions' records in preparing for the District Court habeas corpus hearing, which took place October 26, 1964.

■ The order for conditional release could be revoked only by the court which granted it and only after full hearing. "The part of the court in the release procedure is not *pro forma* or merely technical; it is the performance of judicial acts, dependent solely upon the evidence and the judicial judgment of the court."[2] Release can only be granted by "the court in which the person was tried."[3] And we think the court also has an independent judicial role in any revocation of release. The hospital's recommendation for revocation "must be supported by *reasons* * * *. [Appellant] cannot properly be kept in confinement indefinitely on the bare opinion, conclusion or certificate of the superin-

tendent * * *. [Appellant] is entitled to test that conclusion by the familiar processes of adversary proceedings."[4]

■ In this case, the apparent ground for the hospital's "revocation" of appellant's release in February, 1963, was his Arlington arrest. But the adequacy of this ground was never tested "by the familiar processes of adversary proceedings" in the Court of General Sessions. The ground for that court's revocation of appellant's release—that he wrongfully left the hospital in May, 1963—was patently inadequate since no reason appeared why he was then in custody. The hospital now argues that the habeas corpus hearing in the District Court was adequate substitute for a hearing in the Court of General Sessions. But since only the latter court had jurisdiction to revoke appellant's release, the factual basis for revocation must be found by that court. Moreover, there was no inquiry at the habeas corpus hearing into the facts underlying appellant's Arlington arrest.[5]

■ The hospital's recommitment of appellant in February, 1963, without resort to the courts and solely on the basis of untested allegations by the Arlington police reveals an utter disregard for the procedural requirements which protect liberty. This action and the hospital's misleading request for revocation to the Court of General Sessions give unfortunate credence to charges that hospital authorities act lawlessly toward the men-

---

1. The hospital alleges it sent a letter to the Court of General Sessions on June 21, 1963, requesting revocation of appellant's conditional release solely on the ground of his May, 1963, "unauthorized leave from the hospital." According to court records, however, that letter was never received.

2. Isaac v. United States, 109 U.S.App.D.C. 34, 38, 284 F.2d 168, 172 (1960).

3. D.C.Code § 24–301(e); Hough v. United States, 106 U.S.App.D.C. 192, 271 F.2d 458 (1959).

4. Ragsdale v. Overholser, 108 U.S.App. D.C. 308, 314, 281 F.2d 943, 949 (1960) (emphasis in original).

5. Appellant argues that since the conditional release required only that he report to the hospital for periodic examinations, the sole ground for revocation could be failure to observe this condition. But we think the conditional release order reasonably implied the possibility of revocation on other grounds. Whether the alleged arrest is sufficient ground for revocation here is a question in the first instance for the Court of General Sessions, if revocation is sought.

tally disabled.[6] Such charges may not arise from conduct which is wilfully improper, but rather from hospital authorities' views of the requirements of administrative efficiency or from their beliefs that "papa knows best." But, as Mr. Justice Brandeis has observed, "the greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."[7]

We hold that appellant's conditional release has never been validly revoked and his present confinement is unlawful. We remand this case to the District Court with instructions to hold it in abeyance for no more than ten days, to permit appellee to institute proceedings in the Court of General Sessions regarding the revocation of appellant's conditional release. If no such proceedings are instituted within that time, the rule shall be made absolute and the appellant discharged pursuant to the conditional release.

■ Another matter deserves mention. Appellant has been confined in St. Elizabeths Hospital for more than four years following his acquittal by insanity of an indecent exposure charge. The criminal penalty for conviction of that charge was a 90-day-to-one-year prison term. This disparity in confinement terms is not in itself a ground for appellant's release.[8] But mandatory confinement in a mental hospital under D.C. Code § 24–301 "rests upon a supposition, namely, the necessity for treatment of the mental condition which led to the acquittal by reason of insanity. And this necessity for treatment presupposes in turn that treatment will be accorded."[9] Appellant's testimony casts doubt on whether he is receiving any treatment:

Q. Do you know the name of the doctor who is in charge of your case?

* * * * * *

A. Dr. Economon * * *. He just started working over at John Howard [Pavilion] three months ago, maybe.

Q. And do you see him occasionally in the course of your present stay at the hospital?

A. You mean, to talk to him?

Q. Yes.

A. I think I have talked to him about three times since he has been there.

Q. Now, are you participating in any other kind of treatment at the hospital?

A. No.

Q. Any group meetings, talk to any other psychiatrists?

A. No, he is the only one.

Q. Do you do any work at the hospital?

A. Oh, I work in the clothing room, passing out clothing.

Q. How often do you do that?

A. Twice a week.

Q. For how long each time?

A. Twenty minutes.

Q. Then is it fair to say that you have really very little to do in the hospital?

A. There is not hardly anything to do up there.

The hospital introduced no evidence to show what treatment, if any, appellant was receiving. And the court made no findings of fact or conclusions of law on this question. Our disposition of this case does not bar appellant from raising this question again in habeas corpus proceedings if the Court of General Sessions does revoke his release. We are constrained to note this question here because the District Court did not recognize that the alleged absence of

6. See, *e.g.*, Szasz, Law, Liberty and Psychiatry (1963).

7. Olmstead v. United States, 277 U.S. 438, 479, 48 S.Ct. 564, 573, 72 L.Ed. 944 (1928) (dissenting opinion).

8. Overholser v. O'Beirne, 112 U.S.App. D.C. 267, 302 F.2d 852 (1961).

9. Judge Fahy, concurring in Ragsdale v. Overholser, *supra*, 108 U.S.App.D.C. at 315, 281 F.2d at 950.

68

treatment might draw into question "the constitutionality of th[e] mandatory commitment section" [10] as applied to appellant. This question may be explored if raised in subsequent proceedings.

We remand this case forthwith to the District Court for action consistent with this opinion.

So ordered.

DANAHER, Circuit Judge, concurs in so much of the foregoing opinion as will permit the "appellee to institute proceedings in the Court of General Sessions regarding the revocation of appellant's conditional release."