**UNITED STATES, Appellant,**

**v.**

**Morris CHARNIZON, Appellee.**

**Nos. 4273, 4274.**

District of Columbia Court of Appeals.

Argued July 10, 1967.

Decided Aug. 22, 1967.

Thomas Lumbard, Asst. U. S. Atty. for appellant. David G. Bress, U. S. Atty., Frank Q. Nebeker and Charles R. Work, Asst. U. S. Attys., were on the brief, for appellant.

Frederick C. Timberlake, Washington, D.C., for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

MYERS, Associate Judge.

On October 23, 1962, appellee was charged in the trial court with two counts of false pretenses, D.C.Code § 24–301 (1961), in that he allegedly cashed checks for which there were insufficient funds on deposit. On the same date he was committed to the District of Columbia General Hospital for mental observation under D.C. Code § 24–301(a) (1961). On November 21, 1962, the hospital reported him competent to stand trial and that the crimes with which he was charged were the product of a mental illness. On November 23, 1962, appellee interposed the defense of insanity to both charges and was found not guilty for that reason, resulting in his automatic commitment to Saint Elizabeths Hospital in accordance with the provisions of D.C. Code § 24–301(d) (1961). On April 27, 1964, the superintendent of that hospital certified that appellee was sufficiently recovered to be conditionally released. Thereafter, on May 20, 1964, pursuant to court order, appellee was released upon the following conditions: that he reside at the home of his mother in New York; that he seek employment there; that he establish contact with a specified psychiatric clinic in New York; that he remain on the rolls of the hospital and maintain contact with the hospital; and that he be returned to Saint Elizabeths if, in the opinion of the doctors, he did not demonstrate a suitable adjustment to the community.

On January 20, 1966, appellee voluntarily returned to the hospital here. Some months later he filed in the United States District Court for the District of Columbia a petition for release on a writ of habeas corpus. Following a hearing on November 14, 1966, the District Court judge concluded that appellee's detention was illegal and not authorized by the original order of November 23, 1962, inasmuch as he had been conditionally released from that commitment, and that although appellee might have been detained a reasonable time for observation to determine whether his conditional release should be revoked, "the period of almost eight months * * * [exceeded] the reasonable limits of such detention." Appellee was ordered released from custody, but execution of the order was stayed to December 5, 1966, to allow the institution of appropriate proceedings in the District of Columbia Court of General

Sessions for revocation of appellee's conditional release.

On November 21, 1966, the superintendent of the hospital reported to the United States Attorney in this jurisdiction that if appellee were released he would be a danger to himself or others and requested that steps be taken to revoke his conditional release. A motion for that purpose was then filed. At a hearing upon this motion on December 16, 1966, in the Court of General Sessions, a hospital psychiatrist testified that appellee had not complied with the terms of his conditional release and had gone to Miami where he ran up a hotel bill of $2,701.00, for which he gave a bad check. He stated appellee was still suffering from a mental illness and expressed the opinion that if appellee were allowed to remain at liberty he would be a danger to himself or to others "in the sense of writing bad checks." Appellee offered no evidence on his own behalf. The trial judge denied the motion to revoke the conditional release from Saint Elizabeths Hospital and *sua sponte* directed that appellee be unconditionally released. In so ruling, the trial judge stated:

> Here is a man * * * he has been locked up for nine months already * * This case arose out of a sum of money less than $100.00. In November of [1962] he was found to be of unsound mind. * * * there are dangers and dangers. I have a respect for money, but it is only money. We have to weigh the absolute fact of the man continuing to be incarcerated against the calculated risk of his stealing some more money. Now, I don't want to get into a professional discussion with [the hospital psychiatrist], but I sense a lurking desire to enforce discipline rather than to give this man treatment. * * * I am going to release him, unconditionally.

The sections of our Code here involved apply to an exceptional class of persons who have committed acts forbidden by law, have been found not guilty by reason of insanity, and, in accordance with § 24-301(d), have been committed to a hospital for the mentally ill. Section 24-301(e) specifies the procedure for the release, conditionally or unconditionally, of a person so committed upon certification by the superintendent of the hospital that, in his opinion, the patient has sufficiently recovered his sanity as not to be dangerous to himself or others in the reasonable future.

■■ Under standards established in a series of cases interpreting paragraphs (b), (d) and (e) of § 24-301,[1] one who seeks release without the statutory certification must show (1) that he has recovered his sanity and (2) that such recovery has reached the point where he has no abnormal mental condition which in the reasonably foreseeable future would give rise to danger to the patient or to the public in the event of his release. It was emphasized in Ragsdale v. Overholser, and reaffirmed in Overholser v. O'Beirne,[2] that a patient "may have improved materially and appear to be a good prospect for restoration as a useful member of society; but if an 'abnormal mental condition' renders him potentially dangerous, reasonable medical doubts or reasonable judicial doubts are to be resolved in favor of the public and in favor of the subject's safety." This danger need not be possible physical violence or a crime of violence. "It is enough if there is competent evidence that he may commit any criminal act, for such act will injure others and will expose the person to arrest, trial and conviction. There is al-

---

1. Overholser v. O'Beirne, 112 U.S.App. D.C. 267, 302 F.2d 852 (1961); Overholser v. Russell, 108 U.S.App.D.C. 400, 283 F.2d 195 (1960); Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943 (1960); Overholser v. Leach, 103 U.S.App.D.C. 289, 257 F.2d 667 (1958), cert. denied, 359 U.S. 1013, 79 S.Ct. 1152, 3 L.Ed.2d 1038 (1959).

2. Supra note 1.

ways the additional possible danger \* \* \* that a non-violent criminal act may expose the perpetrator to violent retaliatory acts by the victim of the crime." Overholser v. Russell, 108 U.S.App.D.C. 400, 403, 283 F.2d 195, 198 (1960). See also Green v. United States, 121 U.S.App.D.C. 226, 349 F.2d 203 (1965). Although statutes specify the limits of a sentence for a criminal conviction, neither statutes nor medical treatises can prescribe how much hospitalization is needed to effect rehabilitation.

■ Under § 24–301(e) certification by the superintendent of the hospital recommending the unconditional release of a person committed under § 24–301 is sufficient to authorize the committing court to order such unconditional release at the end of 15 days from the filing and serving of the recommendation; but the court may, upon objection of the United States or the District of Columbia, hold a hearing on the mental condition of the person confined, and, depending on the evidence adduced, may or may not order an unconditional release. Similar provisions are applicable to a conditional release. Hough v. United States, 106 U.S.App.D.C. 192, 195, 271 F.2d 458, 461 (1959), points out that the statute is less specific for conditional release than for unconditional release. It requires the court to find "that the condition of such person warrants his conditional release \* \* \* under such conditions as the court shall see fit." The underlying policy of the statute is to provide treatment and cure for the individual in a manner which affords reasonable assurance of the public safety. Therefore, in ordering a conditional release, the court must conclude that the individual has recovered sufficiently so that under the proposed conditions the person "will not in the reasonable future be dangerous to himself or others."

■ In the present case the hearing in the trial court was upon a motion by the government to revoke appellee's conditional release from Saint Elizabeths Hospital.[3] At that time positive expert medical opinion was presented that appellee had not recovered and would be a danger to himself and others if released. In addition, the record reflects that about two months after appellee was conditionally released he went to Miami, incurred a large hotel bill, and issued a check in payment without sufficient funds on deposit—a repetition of the same type of offense for which he had earlier been found not guilty by reason of insanity. There was no evidence that the superintendent, in recommending that appellee's conditional release be revoked, had acted arbitrarily and capriciously. Without a certificate recommending either his conditional or unconditional release and in the absence of evidence on his behalf, appellee was not entitled to be released.

The grounds advanced by the trial court in directing appellee's unconditional release did not meet the standards set forth in the statute and related decisions. We must therefore remand the case to the District of Columbia Court of General Sessions for rehearing in the light of the principles enunciated here, at which time both parties will be permitted to introduce evidence for consideration by the court in determining whether there is a valid factual basis for revocation of the conditional release or for fashioning other appropriate order.

Order granting the unconditional release of appellee vacated and set aside;

Case remanded for rehearing on motion to revoke appellee's conditional release.

---

3. Only the Court of General Sessions which had committed appellee to a mental hospital after acquittal of offense by reason of insanity had jurisdiction to re-voke his conditional release or to find a factual basis for revocation. Darnell v. Cameron, 121 U.S.App.D.C. 58, 348 F.2d 64 (1965).