**Richard H. JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 91–CF–1123.

District of Columbia Court of Appeals.

Argued Jan. 13, 1994.

Decided Feb. 4, 1994.*

J. Patrick Anthony for appellant. Helen Pitts Miller filed a brief, for appellant.

Lesley Blackmon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the briefs were filed, and John R. Fisher, Thomas C. Black, Colleen M. Kennedy, and Eric L. Yaffe, Asst. U.S. Attys., were on the brief, for appellee.

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on February 4, 1994. It is now being published by direction of the court.

Before FERREN,** Acting Chief Judge, STEADMAN, Associate Judge, and BELSON, Senior Judge.***

FERREN, Acting Chief Judge:

In this criminal commitment case, appellant contends the trial court erred in denying his motion for unconditional release or, in the alternative, for conditional release under D.C.Code § 24–301(k) (1989). Specifically, appellant argues that he presented sufficient evidence at his hearing to show that (1) he does not suffer from a mental illness and (2) even if he does, his condition does not warrant indefinite hospitalization. Appellant also maintains that, under the proper legal standard for release of insanity acquittees, he was entitled to release as a matter of law. We affirm.

## I.

In 1970, while living in Maryland, appellant shot and killed his stepson. The following year he pled guilty to manslaughter and served approximately two years in prison. Two years after his release, appellant was arrested for the murder and robbery of Doritha King. During his trial in 1977, the jury rejected appellant's insanity defense. On appeal, this court reversed his convictions and ordered a new trial. *See (Richard H.) Jackson v. United States*, 404 A.2d 911 (D.C. 1979). Appellant then pled not guilty by reason of insanity (NGI) to the robbery charge and pled guilty to manslaughter. He received a sentence of 7½ to 22½ years in prison for manslaughter but initially was committed to St. Elizabeths Hospital to comply with the NGI portion of his dual sentence.

In 1983, after almost four years at St. Elizabeths, appellant received a conditional release directing him to serve the remainder of his sentence for manslaughter with the Department of Corrections. In accord with the court order granting that release, appellant, upon his parole, was returned to St. Elizabeths in 1985. The following year, the Hospital recommended a conditional release that would allow appellant to seek employment in the community while continuing to reside at St. Elizabeths. In 1987, the trial court denied the Hospital's request to revoke appellant's conditional release after he returned late one day under circumstances indicating that he had violated the terms of his release. Two years later, the court granted appellant's motion for convalescent leave, allowing him both to live and to work in the community while continuing outpatient treatment. The order provided that if appellant's "mental condition deteriorates, or if he violates the conditions of his release, the hospital may return him to total inpatient care, with prompt notification to the Court and counsel."

In June 1990, appellant was involved in an automobile accident in Maryland, where he was cited for driving while under the influence and driving an uninsured vehicle. The following month, he stopped keeping his weekly outpatient appointments. In August, the Hospital placed appellant on unauthorized leave and requested a bench warrant for his return. Maryland also issued bench warrants for his arrest when appellant failed to appear in court for his motor vehicle violations. After appellant was arrested on the Maryland warrants in May 1991, he was returned to St. Elizabeths.

The next month, appellant filed a motion for unconditional release or, in the alternative, for conditional release under D.C.Code § 24–301(k) (1981). After a hearing in August 1991, the trial court denied his motion.

## II.

■ Under D.C.Code § 24–301(k)(3) (1981), appellant must show "by a preponderance of the evidence" that he is entitled to

** Judge FERREN was an Associate Judge of this court at the time of argument. His status changed to Acting Chief Judge on March 18, 1994.

*** Former Chief Judge ROGERS was a member of the panel when the case was decided. After Chief Judge ROGERS' departure from the court, Senior Judge BELSON was drawn to replace her for purposes of considering the motion to publish. Because minor changes have been made in the text of this opinion for publication, Senior Judge BELSON's name appears as a member of the division that approved the opinion as published.

conditional or unconditional release. On this question, "the judgment of the trial court must survive scrutiny by this court unless it is plainly wrong or without evidence to support it." *(Daniel) Jackson v. United States,* 557 A.2d 164, 164 (D.C.1989) (citing *DeVeau v. United States,* 483 A.2d 307, 316 (D.C. 1984)).

### A.

■ The parties agree that, for *unconditional* release, appellant must meet the standard of *Overholser v. O'Beirne,* 112 U.S.App. D.C. 267, 302 F.2d 852 (1961). He must "show (1) that he has recovered his sanity and (2) that such recovery has reached the point where he has no abnormal mental condition which in the reasonably foreseeable future would give rise to danger to the petitioner or to the public in the event of his release." *Id.* at 269, 302 F.2d at 854.

■ The trial court heard testimony from two expert witnesses. The government's expert testified that appellant "carries the diagnosis of an alcohol dependence and at this time a dysthymic disorder as well as a personality disorder with several traits." Appellant's expert conceded on cross-examination that "personality disorders are recognized in the diagnostic ... manual as an abnormal mental condition"—a condition which, when proved, would disqualify appellant for unconditional release under *O'Beirne* unless he could show that, in the reasonable future, that condition would not give rise to danger to appellant or to the public in the event of his release. *See id.*

After hearing this testimony and other evidence, the trial court found that appellant "is subject to and has in existence the mental illnesses described by [the two experts]." The trial court further found that, "when [appellant] is on his own, the decisions that he has made historically are decisions that have placed people in jeopardy." As an example, the judge pointed to the automobile accident that appellant became involved in while driving under the influence in June 1990: "If that doesn't pose a threat to someone in the community, then I cannot imagine what does[,] not to mention a threat to his own existence." Based on these findings,

which are sustained on this record, the trial court did not err in concluding that an unconditional release was not warranted.

### B.

■ The parties also agree that, to establish entitlement to *conditional* release, appellant must meet the standard of *Hough v. United States,* 106 U.S.App.D.C. 192, 271 F.2d 458 (1959). The trial court "must conclude that the individual has recovered sufficiently so that under the proposed conditions—or under conditions which the statute empowers the court to impose 'as [it] shall see fit'—'such person will not, in the reasonable future be dangerous to himself or others.'" *Id.* at 195, 271 F.2d at 461 (footnote omitted) (interpreting D.C.Code § 24–301(e)).

■ In appellant's motion requesting a hearing, he suggested, as an alternative to unconditional release, a release "under such conditions as are appropriate based on the record." He proposed that he "reside in the community, on convalescent leave status, on the condition that he involve himself in daily treatment for alcohol abuse." These were essentially the same conditions under which appellant was living when he became involved in the automobile accident in 1990.

´ Although both expert witnesses discussed this alternative, at no time during the hearing did counsel explicitly assert that appellant was entitled to the least restrictive treatment consistent with his need for treatment and the public's right to protection. The only allusion in the transcript to the least restrictive treatment standard occurs in the court's findings:

> By the testimony of both experts, the conditions that exist are mental illnesses. The question is whether or not they are in remission. If they are not in remission, then they could be in remission under different circumstances. *There could be less restrictive means of controlling them.*

(Emphasis added.) The trial judge then concluded that appellant needed treatment at St. Elizabeths, urging the hospital to get him

"reintegrated into the programs that obviously could control some of [ ]his behavior."

Even if appellant can be understood to have raised the issue of least restrictive treatment, his claim fails under this court's recent decision in *Reese v. United States,* 614 A.2d 506 (D.C.1992). In *Reese,* this court held "that, based on the different statutory schemes for civil and criminal commitments, the 'least restrictive treatment' standard functions somewhat differently in criminal acquittee proceedings." *Reese,* 614 A.2d at 510. The proper standard here is the one articulated in that case:

> In other words, to obtain a conditional release, the criminal acquittee must demonstrate that, if still mentally ill, he or she will not be a danger in the reasonable future. The nature of the acquittee's treatment while confined may be relevant to the level of custody, but it is to be weighed in the context of affording reasonable assurances of public safety.

*Id.* at 511. In *Reese,* as in this case, "[t]he trial judge did not make an explicit finding [as to] the least restrictive treatment alternative." *Id.* at 512. Nonetheless, this court concluded, in words applicable here, that "[t]he judge's remarks about why it was important for appellant to [remain in] the Hospital and [resume treatment] clearly reveal the judge's view that there was no other less restrictive treatment consistent with properly treating appellant and protecting the public." *Id.*

We therefore conclude that the trial court's denial of appellant's motion was not either "plainly wrong or without evidence to support it." *(Daniel) Jackson,* 557 A.2d at 164.

### III.

■ Appellant also presents a novel legal argument. He contends that notions of substantive due process require that the legal standard for releasing an insanity acquittee must parallel the standard for acquitting an accused by reason of insanity. This means that if the acquittee's condition at the time of the crime justifies acquittal (and thus commitment to St. Elizabeths) by reason of insanity, the acquittee can lawfully be confined only as long as his or her condition would continue to justify an initial criminal (insanity) commitment; otherwise, the acquittee is entitled to release under D.C.Code § 24–301. It follows, according to appellant, that because personality disorders do not qualify for the insanity defense in this jurisdiction, a personality disorder cannot serve as a sufficient basis for continuing to confine, and thus for denying § 24–301 release to, an acquittee. He contends, therefore, that even assuming the trial court properly found he had a personality disorder, he was entitled to release from the hospital as a matter of law.[1]

Appellant's argument is unsound. It is true that "one who by reason of insanity is acquitted of a crime and ... is committed to a mental hospital is entitled not only to treatment but to treatment in the least restrictive alternative consistent with the legitimate purposes of a commitment." *Reese,* 614 A.2d at 511 (quoting *Ashe v. Robinson,* 146 U.S.App.D.C. 220, 222, 450 F.2d 681, 683 (1971)). But this does not necessarily require that the standards for release of an acquittee and for acquittal by reason of insanity must be the same.

First, the purpose of committing an insanity acquittee is broader than appellant suggests. It is to "treat the individual's mental illness and protect him and society from his potential dangerousness." *Jones v. United States,* 463 U.S. 354, 368, 103 S.Ct. 3043, 3051–52, 77 L.Ed.2d 694 (1983). The purpose is not limited, as appellant would have it, merely to preventing an acquittee from engaging in the future in criminal conduct derived from mental illness that, once again, would justify acquittal by reason of insanity.

Second, due process requires that continued criminal commitment bear only "some reasonable relation" to the purpose for which the individual was initially committed. *Foucha v. Louisiana,* —— U.S. ——, ——, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992).

---

1. Appellant's counsel raised this contention before the trial court by arguing: "The condition he has is not something that could yield an insanity defense which is what I believe Dr. Madsen was telling the Court yesterday. We submit that what he has now may be a personality disorder. It is just not enough as a matter of law to keep him in John Howard."

The relationship between the respective purposes of initial and continued criminal commitment, therefore, need not be identical, as appellant suggests; it need only be "reasonable." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).

Finally, we reject appellant's attenuated argument from the case law. Appellant begins with a footnote in *Dixon v. Jacobs*, 138 U.S.App.D.C. 319, 427 F.2d 589 (1970), which stated, in discussing grounds for a mental patient's release from criminal commitment, that "a person is mentally ill if he [or she] suffers from an abnormal condition of the mind that substantially affects mental or emotional processes." *Id.* at 325 n. 17, 427 F.2d at 595 n. 17. Appellant next points out that in *McDonald v. United States*, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962) (en banc), the court had previously used the same language to describe the standard for acquittal by reason of insanity: "a mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes." *Id.* at 124, 312 F.2d at 851. Appellant then suggests that, by using the same language in *Dixon* to describe the standard for release of insanity acquittees that the court had used earlier in *McDonald* to characterize the standard for acquittal by reason of insanity, the court implied that those standards are necessarily the same. Thus, says appellant, we must look to this jurisdiction's current standard for acquittal by reason of insanity, set out in *Bethea v. United States*, 365 A.2d 64 (D.C.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1976), to determine the current standard for release of insanity acquittees. Because, according to appellant, a "personality disorder"—his present malady—does not satisfy the *Bethea* standard for acquittal by reason of insanity, he was entitled to release from the hospital as a matter of law.

Appellant's argument, essentially based on a comparison between *Dixon* and *McDonald,* is creative but lacks a solid foundation. Neither of those cases suggested the conclusion that appellant would like us to reach. To the contrary, as the government points out, the court has stated in *Overholser v. Leach,* 103 U.S.App.D.C. 289, 292 n. 4, 257 F.2d 667, 670 n. 4 (1958), *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1152, 3 L.Ed.2d 1038 (1959), that "the standards and tests for: (1) exculpation from criminal responsibility; (2) competence to stand trial; and (3) release from hospital custody after a verdict of not guilty by reason of insanity, are separate and distinct." [2] Nothing in *Dixon* or *McDonald* erases that statement. The fact that the court, in these two cases decided eight years apart, used substantially the same language to describe the criminal commitment and release standards, respectively, appears, for all we can tell, to be mere happenstance. The standard governing release of insanity acquittees, therefore, is not necessarily identical to the standard for acquittal by reason of insanity, as *Leach* makes clear.

Given the foregoing conclusion, it is not necessary—as appellant's counsel conceded at oral argument—for us to address appellant's further contention, that personality disorders do not qualify for the insanity defense (and thus for release from criminal commitment) in the District of Columbia.

*Affirmed.*

---

**2.** *See also Overholser v. O'Beirne,* 112 U.S.App. D.C. 267, 270–71, 302 F.2d 852, 853–56 (1961).