**Leslie L. DeVEAU, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–1391.**

District of Columbia Court of Appeals.

Argued Aug. 7, 1984.

Decided Oct. 24, 1984.

Mark S. Carlin, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on the briefs, for appellant.

Sharon M. Collins, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, BELSON and ROGERS, Associate Judges.

PRYOR, Associate Judge:

Leslie L. DeVeau, acquitted of murder by reason of insanity in 1982 on stipulated facts, appeals from an order of the trial court denying her request for conditional release from St. Elizabeths Hospital. She claims principally that the court's findings of fact are contrary to the evidence and that its legal conclusions are erroneous. She also contends that the court misconstrued its statutory role at her release hearing, improperly failed to consider alternatives to the proposed conditions of release, and ignored her right to treatment. In this opinion, we address the proper role of the trial court at a conditional release hearing, setting forth several of the factors upon which the trial court may properly base its decision whether to release a patient previously acquitted of an offense by reason of insanity (hereinafter "acquittee"). We also assess our scope of review of a decision of this nature. After articulating these principles, we remand the case to the trial court for further action in accordance with this opinion.

## I

In December 1982, DeVeau was acquitted by reason of insanity in the shooting death of her young daughter, Erin DeVeau.[1] Following her commitment to St. Elizabeths Hospital pursuant to D.C.Code § 24–301(d)(1) (1981),[2] a hearing was held on February 22, 1983, at which time it was determined that Mrs. DeVeau had not regained her mental health such that she could be released from custody.[3] Nearly three months later, on May 19, the Superintendent of St. Elizabeths certified to the trial court that, after an evaluation of De-

---

**1.** DeVeau killed her sleeping child, on the morning of March 18, 1982, with her husband's shotgun. She then attempted to kill herself with the weapon, but only succeeded in injuring her arm, which ultimately had to be amputated.

DeVeau has had a history of mental illness. Prior to the death of her daughter, DeVeau was hospitalized in 1979 at Psychiatric Institute, after several suicide attempts and one attempt on her daughter's life. She had undergone therapy and drug treatment at that time, but eventually discontinued both sometime prior to her daughter's death.

**2.** The section provides:
If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e) of this section.

**3.** *Id.* § 24–301(d)(2)(A) provides in relevant part:
A person confined pursuant to paragraph (1) of this subsection shall have a hearing, unless waived, within 50 days of his confinement to determine whether he is entitled to release from custody.
At this hearing, the person confined has the burden of proving, by a preponderance of the evidence, that he is entitled to either conditional or unconditional release. *Id.* § 24–301(d)(2)(B).

Veau, her conditional release from the hospital had been deemed appropriate "as a therapeutic measure."[4] An amendment to the certification was filed by the hospital in July.[5]

Because DeVeau's conditional release was opposed by the United States Attorney's Office, a hearing was held on September 27 and October 3, 1983. *See id.* § 24–301(e).[6] The trial court heard testimony from the hospital's psychiatrist, Dr. McIlroy, and two other psychiatrists, Drs. Blumberg and Goldman. Reverend Steven Arpee and David Reynolds, the two proposed custodians, also testified. All five witnesses favored DeVeau's conditional release. After recording its findings of fact, the court in its order stated:

Upon consideration of the written reports and oral testimony of three psychiatrists, the court files and records, and the arguments of counsel, the court is unable to conclude that Ms. DeVeau has recovered sufficiently so that under the proposed conditions of release she would not in the reasonable future be dangerous to herself or others. This conclusion

4. The Superintendent stated in relevant part:
   Dr. Richard J. McIlroy, staff psychiatrist, recently evaluated Ms. DeVeau as part of a Medical Staff Conference and the following determinations were made. Ms. DeVeau in her nine month stay at Saint Elizabeths has progressed to the point where her hospital adjustment is excellent and she has 9:00 a.m. to 5:00 p.m. unsupervised ground privileges. She has never been considered dangerous to others and our primary concern for Ms. DeVeau has been her past suicidal propensities. At this point we are concerned about her ability to handle stress and strains engendered by her return to the community. At this time visits to the community are indicated as a therapeutic measure. We recommend the Hospital may at its discretion provide Ms. DeVeau with overnight, weekend and holiday visits in the community under the supervision of relatives .... In our opinion Ms. DeVeau has recovered sufficiently from her mental illness to be granted a conditional release without danger to herself or others, in accordance with the provisions of Title 24, Section 301(e), D.C.Code, as amended, if the conditions of the release are as outlined in the preceding paragraph. Ms. DeVeau will continue to reside at the Hospital and the Hospital will not place her on outpatient status without further Court order.

5. The amendment suggested that DeVeau be allowed, as part of her conditional release, to "participate in volunteer work at Saint Margaret's Episcopal Church, ... under the supervision of the Rev. Steven Arpee," and to have weekend visits in Annandale with her sister and brother-in-law, once each month.

6. The section provides in relevant part:
   Where any person has been confined in a hospital for the mentally ill pursuant to subsection (d) of this section, and the superintendent of such hospital certifies: (1) That such person has recovered his sanity; (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others; and (3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital, and such certificate is filed with the clerk of the court in which the person was tried, and a copy thereof is served on the United States Attorney ..., such certificate shall be sufficient to authorize the court to order the unconditional release of the person so confined ...; but the court in its discretion may, or upon objection of the United States ... shall, after due notice, hold a hearing at which evidence as to the mental condition of the person so confined may be submitted, including the testimony of 1 or more psychiatrists from said hospital. The court shall weigh the evidence and, if the court finds that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others, the court shall order such person unconditionally released from further confinement in said hospital. If the court does not so find, the court shall order such person returned to said hospital. Where, in the judgment of the superintendent of such hospital, a person confined under subsection (d) of this section is not in such condition as to warrant his unconditional release, but is in a condition to be conditionally released under supervision, and such certificate is filed and served as above provided, such certificate shall be sufficient to authorize the court to order the release of such person under such conditions as the court shall see fit ... : Provided, that the provisions as to hearing prior to unconditional release shall also apply to conditional releases, and, if, after a hearing and weighing the evidence, the court shall find that the condition of such person warrants his conditional release, the court shall order his release under such conditions as the court shall see fit, or, if the court does not so

is made with particular reference to the recurring nature of Ms. DeVeau's mental illness and her prior release from Psychiatric Institute after a dramatic improvement in symptoms to the point where there was no observable illness, a release which left her with severe mental problems, culminating in her daughter's death and her own disfigurement. Furthermore, under the proposed conditions of release, the court finds that there is a substantial probability that Ms. DeVeau will be faced with the stressful and frustrating situations described by Dr. Goldman, situations which might cause Ms. DeVeau to become self-destructive.

The court accordingly denied the request for conditional release.

## II

The District of Columbia, like many states, provides for judicial approval prior to the release of an acquittee.[7] In so doing, this jurisdiction has concluded legislatively that the judiciary is best suited to performing "the value-weighing function of balancing the unpredictable risks to individual liberty and public safety" posed by the release decision. Goldstein & Katz, *Dangerousness and Mental Illness: Some Observations on the Decision to Release Persons Acquitted by Reason of Insanity*, 70 YALE L.J. 225, 237 (1960); *see Dixon v. Jacobs*, 138 U.S.App.D.C. 319, 330, 427 F.2d 589, 600 (1970) ("The District Court ... faces an awesome task. It is charged not

only with the ultimate responsibility for decision, but also with the duty of assuring, *in the last analysis*, that the interests of the patient and the public are properly protected.") (Emphasis added.) It has been stated that the underlying policy served by § 24–301(e) is "to provide treatment and cure for the individual in a manner which affords reasonable assurance of the public safety." *United States v. Charnizon*, 232 A.2d 586, 589 (D.C.1967); *United States v. Ecker*, 177 U.S.App.D.C. 31, 37, 543 F.2d 178, 184 (1976) (hereinafter *Ecker II*) (quoting *Hough v. United States*, 106 U.S.App.D.C. 192, 195, 271 F.2d 458, 461 (1959)), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977).

▇▇▇ Section 24–301(e) provides for judicial review of the hospital's certification that a patient previously acquitted of a criminal offense by reason of insanity (hereinafter "acquittee") is well enough to reenter the community on a conditional or unconditional basis. *See supra* note 6. Although a hearing on the certificate must be held if release is contested by the United States Attorney's Office, the statute also provides that the court, *sua sponte*, may convene such a hearing. *Id.* The operative question to be determined at a hearing for conditional release is whether, under the conditions proposed, the acquittee will or will not, in the reasonable future, be dangerous[8] to herself or others. *Hough v.*

---

find, the court shall order such person returned to such hospital.

**7.** *See, e.g.,* KAN.STAT.ANN. § 22–3428(3) (1981); MAINE REV.STAT.ANN. tit. 15, § 104–A(2) (1983–84 Supp.); N.J. STAT.ANN. §§ 2C:4–9 (1982); N.Y. CRIM.PROC.LAW § 330.20(12) (1983); WASH.REV. CODE ANN. tit. 10, § 10.77.150(2) (1984–85 Supp.); WISC.STAT.ANN. § 971.17(2) (1983–84 Supp.).

**8.** Dangerousness is a characteristic that encompasses two elements. In evaluating dangerousness, the court must consider the magnitude of the harm threatened by release, and the likelihood of the harm occurring in the reasonable future. *See Cross v. Harris*, 135 U.S.App.D.C. 259, 264, 418 F.2d 1095, 1100 (1969).

In *Ecker II, supra*, the court clarified prior conflicting pronouncements as to whether the

trial court was required to find that the acquittee *will* not be dangerous in order to effect his release, or that the acquittee is not *likely* to be dangerous. *See Ecker II, supra*, 177 U.S.App. D.C. at 40, 543 F.2d at 187. The court held that the former was the correct standard. *See id.* (quoting *Hough v. United States, supra*). DeVeau claims that the court erred in this regard, but we are not convinced.

In *Dixon v. Jacobs, supra*, the court stated that the "likely" standard was to be applied. *See* 138 U.S.App.D.C. at 328, 427 F.2d at 598. However, *Bolton v. Harris*, 130 U.S.App.D.C. 1, 12, 395 F.2d 642, 653 (1968), cited in *Dixon*, referred to the statutory standard for releasing *civil* committees as binding. *See id.* at 12 n. 65, 395 F.2d at 653 n. 65. We think that this derived from *Bolton*'s holding that the Fifth Amendment's equal protection component required that pro-

*United States, supra,* 106 U.S.App.D.C. at 195, 271 F.2d at 461. Whether an acquittee will be dangerous under the proposed conditions is a mixed question of law and fact, but it is clear that the ultimate determination of eligibility for release is, under our statutes, a decision entrusted to the court.

DeVeau acknowledges that the question of dangerousness is ultimately one of law for the court. She contends, however, placing primary reliance upon *Tribby v. Cameron,* 126 U.S.App.D.C. 327, 379 F.2d 104 (1967), and *Hough v. United States, supra,* that in deciding the question the court can conduct merely an "agency-type" review of the hospital's determination that the acquittee is ready to be conditionally released. That is to say, when ruling upon the hospital's certification (which includes a claim that the acquittee will not be dangerous in the reasonable future), after a hearing, the court can only determine whether it is supported by substantial record evidence. It is submitted that when, as is alleged in this case, all of the medical testimony points in favor of release, the trial court must defer necessarily to the hospital's determination and therefore release the acquittee. We cannot agree.

In reaching our conclusion, we have considered the qualitatively different professional responsibilities that doctors and trial judges bring to release hearings. It has been observed that the primary concern of hospitals and psychiatrists is whether release constitutes sound therapeutic treatment for the patient.[9] *E.g.,* Slovenko, *Disposition of the Insanity Acquittee,* 11 J. PSYCHIATRY & L. 97, 103 (1983) (hospitals feel justified in releasing individuals when there is "nothing more to treat"). Courts, however, are charged with the broader task of assuring the best treatment for the acquittee *in a manner that protects the public safety.*[10] *State v. Carter,* 64 N.J. 382, 398, 316 A.2d 449, 458 (1974); Goldstein & Katz, *supra,* 70 YALE L.J. at 236–37; *see* Note, *Release From Confinement of Persons Acquitted by Reason of Insanity in Ohio,* 13 AKRON L.REV. 582, 586 (1980). We believe that our statute's scheme places primary responsibility upon the trial court, not the doctors, to balance the competing interests of the acquittee's liberty (including her right to treatment) and the community's safety. The fulcrum of this balance is the *court's* determination of the acquittee's dangerousness *vel non* in the reasonable future under the proposed conditions of release. Although we agree with DeVeau that dangerousness is in one sense (treatment) a predictive medical determination, it involves, for release purposes, a broader judgment that must ultimately be made by the trial court. *See* Goldstein & Katz, *supra,* 70 YALE L.J. at 230; Note, *supra,* 13 AKRON L.REV. at 587.

In *Ecker II, supra,* the circuit court was presented with the question that we now consider: what is the role of the trial court when reviewing a St. Elizabeths' certification that an acquittee is ready to be conditionally released? Ecker had been acquitted by reason of his insanity in the rape and murder of a young congressional aide. He was committed to St. Elizabeths' in 1968, and the hospital's initial request for his conditional release was denied in February 1973. *See United States v. Ecker,* 156

---

cedures for committing acquittees be substantially similar to those for civil committees. *See id.* at 10, 395 F.2d at 651. A subsequent redrafting of the statute by Congress, and more recent court pronouncements upon the permissible differences in treatment accorded acquittees and civil committees, *see, e.g., Jones v. United States,* 432 A.2d 364 (1981) (en banc), *aff'd,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), has undercut the *Dixon* and *Bolton* holdings in this regard. Therefore, we think that the *Ecker II* court was correct in following the language of the statute, as did the *Hough* court.

9. Indeed, DeVeau's brief highlights the fact that the three doctors who testified at her release hearing concurred that the conditional release was warranted from a therapeutic standpoint.

10. The public safety, therefore, places a practical restriction upon the types of treatment (*e.g.,* conditional release) available to the acquittee. *See Ecker II, supra,* 177 U.S.App.D.C. at 53, 543 F.2d at 200. DeVeau's claim that the trial court ignored her right to treatment, a claim which we do not address in light of our remand of this case, must be considered with this in mind.

U.S.App.D.C. 223, 224, 479 F.2d 1206, 1207 (1973) (hereinafter *Ecker I*). The testimony of all four psychiatric witnesses at Ecker's second hearing supported the hospital's request. Despite this unanimity, the trial court, after recording its findings of fact and conclusions of law, denied the request for release. *Ecker II, supra,* 177 U.S.App.D.C. at 35, 543 F.2d at 182.

Ecker argued on appeal that the trial court had overstepped its proper role when reviewing and then denying the hospital's request for his release. Citing *Tribby v. Cameron, supra,* he suggested that the court could not second guess the hospital's (and the psychiatrists') determination that his conditional release was appropriate. The *Ecker II* court disagreed, persuasively in our view, by interpreting *Tribby* as setting forth a narrow standard of judicial review for hospital *treatment* decisions, which, distinct from release decisions, do not involve the safety of the community:

> We find no basis for concluding that this narrow standard of review on the issue of adequate treatment also applies to hospital certifications for conditional release. *Tribby* was a "decision relat[ing] essentially to the *internal* administration of the hospital" [*Dixon v. Jacobs, supra,* 138 U.S.App.D.C. at 327, 427 F.2d at 597 (emphasis added by *Ecker II* court)] and did not involve the public safety considerations inherent in a conditional or unconditional release proposal. When a district court is asked to review the medical judgment of a hospital staff on a question of internal admin-

istration its function does "resemble[] ours when we review agency action," and in deference to medical expertise the hospital should be allowed to operate "within a broad range of discretion." On the other hand, when a district court is asked to review a conditional release certification the basic policy underlying section 301(e) comes into play, and the court must decide whether the hospital's proposal "provide[s] treatment and cure for the individual in a manner which affords reasonable assurance for the public safety." [*Hough v. United States, supra,* 106 U.S.App.D.C. at 195, 271 F.2d at 461].

*Ecker II, supra,* 177 U.S.App.D.C. at 35–36, 543 F.2d at 182–83 (footnotes omitted); *accord United States v. McNeil,* 140 U.S. App.D.C. 228, 230, 434 F.2d 502, 504 (1970) (per curiam) (court not bound by expert testimony); *Dixon v. Jacobs, supra,* 138 U.S.App.D.C. at 328, 427 F.2d at 598 (discussing judicial review of unconditional release request).[11]

◼ In keeping with our understanding of the statutory scheme discussed *supra,* we agree with the *Ecker II* court's interpretation of the law, and hold that the trial court must, after considering, *inter alia,* the pertinent psychiatric testimony offered at an acquittee's § 301(e) hearing on the hospital's certification for release, make its own de novo determination[12] of whether the acquittee will present a danger to herself or others under the proposed conditions of release. *Ecker II, supra,* 177 U.S. App.D.C. at 40, 543 F.2d at 187.[13] This

11. *See also In re Hurt,* 437 A.2d 590, 594 (D.C. 1981) (interpreting *Tribby* as setting forth agency-type review of hospital treatment decisions for confined acquittee); *Covington v. Harris,* 136 U.S.App.D.C. 35, 39, 419 F.2d 617, 621 (1969) (same).

12. Once the hearing has been convened, the certificate itself does not establish a presumption in favor of release. *See Ragsdale v. Overholser,* 108 U.S.App.D.C. 308, 313, 281 F.2d 943, 948 (1960).

13. We do not find *Hough v. United States, supra,* to be in opposition to this holding. *Hough* set

forth the standard for conditional release (will not in the reasonable future be dangerous to self or others) and then merely noted at the end of the opinion that "[t]he court would simply fulfill its statutory role by deciding whether or not the evidence supports the hospital's determination . . . ." 106 U.S.App.D.C. at 196, 271 F.2d at 462. In our view, this language set forth one permissible way in which the court could independently reach its own determination of the acquittee's dangerousness. It did not preclude a more searching inquiry, nor establish an agency-type standard of review.

holding comports with the statutory requirement that the *court* must determine in the final analysis whether release is in the public's as well as the acquittee's interest. A contrary holding, by which the court would have to defer to the doctors' medical consensus regarding dangerousness, would effectively nullify the statute and render the trial court's imprimatur practically superfluous. *See* Note, *Constitutional Standards for Release of the Civilly Committed and Not Guilty by Reason of Insanity: A Strict Scrutiny Analysis*, 20 ARIZ.L.REV. 233, 269 (1978) ("If trial courts always agreed with the superintendent, there would be no need for the trial court function.").

### III

█ It is clear that the § 301(e) hearing must be solely concerned with the appropriateness of the release, under the proposed conditions. By her acquittal, society has determined that DeVeau should not be punished for her actions, *see, e.g., Jones v. United States, supra* note 8, 432 A.2d at 370, *aff'd*, 103 S.Ct. at 3052 (§ 301(d) commitment not punitive). The hearing has been deemed informal and nonadversarial, with no party bearing a formal burden of proof, *Ecker II, supra*, 177 U.S.App.D.C. at 46, 543 F.2d at 193 (opinion of Wilkey, J.);[14] *Dixon v. Jacobs, supra*, 138 U.S.App.

D.C. at 328 n. 29, 427 F.2d at 598 n. 29; *compare* D.C.Code § 301(d)(2)(B) (at initial post-acquittal hearing, acquittee has burden of proving sanity); *id.* § 301(k)(3) (burden of proof on acquittee for subsequent self-initiated motions for release). We believe that this view is sound.[15] However, in order to clarify the trial court's role at the hearing, we hold, consistent with analogous sections of the statute, that after hearing the evidence on the hospital's certification, the court must be convinced, by a preponderance of the evidence, that conditional release is warranted.[16] *See* D.C.Code § 301(d)(2)(B) (preponderance standard at initial hearing after commitment);[17] *id.* § 301(k)(3) (preponderance standard at hearing held upon acquittee's petition for release); *Ecker II, supra*, 177 U.S.App. D.C. at 41, 543 F.2d at 188 (court finding "at least more probable than not" that acquittee will not be violently dangerous in reasonable future). We think it prudent next to set forth some of the factors that the trial court may properly consider in reaching its conclusion.[18]

█ It cannot be gainsaid that the hospital records, files, and psychiatric history of the acquittee are all relevant, and may be considered by the court. *See, e.g., Ecker II, supra*, 177 U.S.App.D.C. at 44, 543 F.2d at 191. It is appropriate, therefore, for the

---

14. That the *Ecker II* court has required the trial court to make an "affirmative finding" of an acquittee's nondangerousness, *id.* at 41, 453 F.2d at 188 (quotation omitted), does not mean, contrary to DeVeau's argument, that any formal burden of proof has been foisted upon the acquittee. Rather, we believe that the phrase merely emphasizes the responsibility of the trial court to independently evaluate the evidence before it.

15. We adopt this view despite one commentator's criticism that a " 'shared' burden of proof ... while theoretically sound, seems to invite administrative confusion." Note, *Commitment and Release of Persons Found Not Guilty by Reason of Insanity: A Georgia Perspective*, 15 GA.L.REV. 1065, 1100 (1981) (discussing *Benham, supra*).

16. The preponderance standard accords with prior holdings in this jurisdiction that, when the evidence weighs equally in favor and against

release of the acquittee, the court must deny release in order to protect the public's safety. *See United States v. Charnizon, supra*, 232 A.2d at 588; *accord Ragsdale v. Overholser, supra*, 108 U.S.App.D.C. at 312, 281 F.2d at 947.

17. In *Jones v. United States, supra*, we explained why Congress, in the analogous context of § 301(d) hearings, chose to adopt the preponderance standard:

> An acquittee's past insanity is proven by a preponderance of the evidence. His present insanity is determined by his failure to rebut, by a preponderance of the evidence, the presumption of continuing insanity.

*Id.*, 432 A.2d at 375.

18. We do not mean to present an exhaustive list of relevant criteria, since the merits of each acquittee's case must be judged individually.

court to examine previous diagnoses and prognoses, attempts to release the acquittee, the success or failure of any attempts, and whether these past occurrences are similar to or distinguishable from the present situation, including the latest proposed conditions of release. *See id.*

■ The court may refer also to the acquittee's demonstrated behavior, including the act for which she was prosecuted as well as any other prior crimes or bad acts, if, in the particular case before the court, the behavior relates to the current determination of dangerousness.[19] It has been suggested that one's prior conduct is at least one indicator of future behavior. *E.g.*, Slovenko, *supra*, 11 J. PSYCHIATRY & L. at 102. To preclude an examination of the acquittee's prior behavior would, therefore, go against logic and unduly handicap the court.[20]

Third, the court may take into account the period of time that has elapsed since the acquittee was adjudged unsuitable for conditional or unconditional release. For it cannot be denied that, in a particular case, the passage of time allows observation and may be relevant to finding an improvement in the acquittee's condition. *See Ecker I, supra*, 156 U.S.App.D.C. at 225, 227, 479 F.2d at 1208, 1210; *Dixon v. Jacobs, supra*, 138 U.S.App.D.C. at 334, 427 F.2d at 604 (Leventhal, J., concurring); Note, *Rules For an Exceptional Class: The Commitment and Release of Persons Acquitted of Violent Offenses by Reason of Insanity*, 57 N.Y.U.L. REV. 281, 326 (1982); *cf.* Note, *Mistreating a Symptom: The Legitimizing of Mandatory, Indefinite Commitment of Insanity Acquittees— Jones v. United States*, 11 PEPPERDINE L.REV. 569, 586 (1984).

Fourth, the court must examine the proposed conditions themselves and determine if, as applied to this particular acquittee, they will protect the public safety. This determination must be made on an individualized basis. *See Ecker I, supra*, 156 U.S. App.D.C. at 226 n. 9, 479 F.2d at 1209 n. 9; *accord State v. Carter, supra*, 64 N.J. at 403, 316 A.2d at 461.

■ Finally, and related to each of the above factors, the court will consider the testimony adduced at the hearing. Given the specialized nature of the inquiry, the importance of the psychiatrists' testimony is obvious, despite the "lack of certainty and fallibility of psychiatric diagnosis." [21] *Addington v. Texas*, 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979). It is also obvious that, in the course of the hearing, psychiatrists will offer opinions on each of the above factors, and how they bear on the decision whether to release the acquittee. Although the trial court is not bound necessarily by the testimony of the "experts," *see supra* Part I, it may not arbitrarily disregard such testimony. *See United States v. McNeil, supra*, 140 U.S. App.D.C. at 240–41, 434 F.2d at 514–15 (Bazelon, C.J., concurring) (quoting *Doug-*

---

**19.** For example, one commentator has noted the relevance of whether the offense was committed against a family member. *See* Slovenko, *supra*, 11 J. PSYCHIATRY & L. at 108. If so, it was suggested, then the chance of recurrence is slight. *Id.*

Similarly, the court may find elucidating whether the acquittee's offense was a violent one. Although the offense need not be violent in order to justify commitment after acquittal, *Jones v. United States, supra* note 8, 103 S.Ct. at 3050, or continued custody, *United States v. Charnizon, supra*, 232 A.2d at 588–89. *But see Ecker II, supra*, 177 U.S.App.D.C. at 41, 543 F.2d at 188 (quoting *Dixon v. Jacobs, supra*, 138 U.S. App.D.C. at 332, 427 F.2d at 602 (Leventhal, J., concurring)), it nevertheless may be relevant to the determination of whether the public's safety will be protected if the acquittee is released.

**20.** We emphasize that there are relevancy limits to the use of prior antisocial acts in predicting future dangerousness. The mere commission of such an act or acts is not, without more, sufficient to establish dangerousness by a preponderance of the evidence. *See Covington v. Harris, supra* note 11, 136 U.S.App.D.C. at 45–46, 419 F.2d at 627–28.

**21.** Notably, when the conditions proposed include members of the public having custodial responsibility for the acquittee, as in this case, the testimony of the proposed custodians takes on special importance as well.

las v. United States, 99 U.S.App.D.C. 232, 239, 239 F.2d 52, 59 (1956)).[22]

Based upon their evaluations of the factors heretofore discussed, and any others deemed relevant, the doctors will render predictive opinions concerning future dangerousness of the acquittee. The court must take into account these professional opinions, whether there is a consensus expressed, and whether the doctors have persuasively given reasons for their opinions. See id. If the trial court has reason to reject the opinions of the experts on the issue of dangerousness, it may do so even though they are unanimous. See, e.g., Ecker II, supra, 177 U.S.App.D.C. at 43, 543 F.2d at 190. But see People v. Blumenshine, 72 Ill.App.3d 949, 953–55, 29 Ill.Dec. 73, 76–77, 391 N.E.2d 232, 235–36 (1979) (fact that psychiatrists cannot "guarantee" nondangerousness does not provide trial court with sufficient reason to deny release); cf. generally Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 3408–09, 77 L.Ed.2d 1090 (1983) (Blackmun, J., dissenting) (summarizing literature holding that psychiatric predictions of future dangerousness are unreliable).

## IV

■ The trial court's judgment must survive our scrutiny unless it is "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1981); accord Ecker II, supra, 177 U.S.App.D.C. at 41, 543 F.2d at 188 (clearly erroneous). In cases where the conditional release of an acquittee is in issue, a clear statement of the facts found by the trial court is required, particularly

when the release is denied in the face of unanimous expert testimony in favor of release.

■ In that situation, the court must identify the contrary evidence or other factors that lead it to conclude that it should not defer to their testimony. See, e.g., Ecker II, supra, 177 U.S.App.D.C. at 42, 543 F.2d at 189; accord United States v. McNeil, supra. Moreover, if the court finds that the proposed conditions of release do not adequately provide for the public safety, reasons derived from the record must be given for this judgment. See, e.g., Ecker II, supra, 177 U.S.App.D.C. at 42, 543 F.2d at 189; see also id. at 61, 543 F.2d at 208 (statement of Wright, J., of reasons for voting for rehearing en banc).[23]

■ In the instant case, we cannot say that the court's order presented facts sufficient to "provide a framework adequate for appellate review ...." United States v. McNeil, supra, 140 U.S.App.D.C. at 229, 434 F.2d at 503 (quoted in Ecker II, supra, 177 U.S.App.D.C. at 42, 543 F.2d at 189). At the hearing, three psychiatrists discussed in detail DeVeau's present mental state, her psychological history (which included a period of hospitalization and therapy prior to the death of her daughter), and the proposed conditions of release. Additionally, the two proposed custodians testified. All of the witnesses favored DeVeau's conditional release. Our reading of the court's findings of fact, compared with the record as a whole, does not convince us that the court adequately addressed all of the relevant evidence before it. We cannot

---

22. In Douglas v. United States, supra, the court held that a jury's verdict of guilty could not stand where there was uncontradicted psychiatric evidence presented at trial that the accused was insane at the time of the offenses. The court stated that expert testimony "must be considered with the other evidence, not arbitrarily rejected. A jury may not be upheld in arbitrarily convicting of crime." Id. at 239, 239 F.2d at 59 (footnote omitted). It is settled that this principle applies when the court is considering a § 24–301(e) release. Ragsdale v. Overholser, supra, 108 U.S.App.D.C. at 311, 281 F.2d at 946.

23. In its discretion, the trial court may delete objectionable portions of the release plan or add others, but it need not do so. See Hough v. United States, supra, 106 U.S.App.D.C. at 195 n. 2, 271 F.2d at 461 n. 2. If the hospital believes that conditional release is in an acquittee's therapeutic interest, it is incumbent upon that institution to propose the appropriate conditions. The trial court's findings must state why the conditions have been rejected, a requirement that will hopefully facilitate, if feasible, a renewed plan for release by the hospital.

find, absent a more complete treatment of the evidence by the trial court, that the court's determination of DeVeau's continuing dangerousness is contrary to that evidence. Yet, based upon the order before us, we cannot conclude that the court's findings adequately reflect the evidence and therefore are sufficiently supportive of its order. We believe that a remand is appropriate to enable the court to review and (if it chooses) supplement the existing record in accordance with this opinion. The court shall then draft a new order as it deems appropriate, accompanied by its findings of fact and conclusions of law.

*Remanded.*