**Tyrone MARTIN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 92–CO–813.

District of Columbia Court of Appeals.

Decided Sept. 4, 1992.

Jamie S. Gardner and Robert L. Wilkins, Public Defender Service, Washington, D.C., were on appellant's motion for summary reversal.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, and Steven J. Durham, Asst. U.S. Attys., Washington, D.C., were on appellee's opposition to the motion for summary reversal.

Before TERRY, SCHWELB, and KING, Associate Judges, in chambers.

TERRY, Associate Judge:

This is an appeal from a trial court order denying appellant's motion to reconsider and modify his conditions of release. We hold that the order is "supported by the proceedings below," D.C.Code § 23–1324(b) (1989), and accordingly affirm.[1]

Appellant Martin was convicted of first-degree murder while armed[2] and assault with intent to kill while armed.[3] On appeal his convictions were reversed by this court, and the case was remanded for a new trial. *Martin v. United States*, 606 A.2d 120 (D.C.1991) ("*Martin I*"). The government's petition for rehearing en banc was denied. *Id.* at 136. Martin then filed in the trial court a motion to reconsider his conditions of release, challenging an earlier decision to detain him without bond pending trial. The court held a hearing in June of this year and, at its conclusion, denied the motion under D.C.Code § 23–1325(a).[4] Relying in part on the facts of the case as recited in both the briefs and the opinion in *Martin I*, the court found by clear and convincing evidence that Martin would be a danger to the community:

There are a lot of factors that go into danger quite apart from how the jury is going to evaluate the motive evidence in this case [5]. . . .

It seems to me, no matter how the jury ultimately resolves this issue with respect to motive . . . I think, considering the totality of all the circumstances, including his conduct and his prior criminal history, it still to me proves clear and convincing evidence of his danger, quite apart from the jury's ability to determine the issue of his guilt or innocence based upon a different standard of guilt beyond a reasonable doubt.

The court therefore denied the motion to reconsider the conditions of release and set the case for trial on September 21.

■ Martin noted this appeal and moved for summary reversal of the trial court's order. The government, in response, filed an opposition to Martin's motion for summary reversal, in which it argued that "the order of the trial court must be affirmed" because that order is, in the words of D.C.Code § 23–1324(b), "supported by the proceedings below."[6] The government did not, however, file a cross-motion for summary affirmance.

We are fully satisfied that the trial court's order meets the test of section 23–1324(b). We agree with the government,

1. We grant appellant's motion for expedited consideration of this appeal.

2. D.C.Code §§ 22–2401, 22–3202 (1989).

3. D.C.Code §§ 22–501, 22–3202 (1989).

4. Section 23–1325(a) provides:

    A person who is charged with murder in the first degree or assault with intent to kill while armed shall be treated in accordance with the provisions of section 23–1321 [which provides generally for pre-trial release in criminal cases] unless the judicial officer has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, the person may be ordered detained. In any pretrial detention hearing under the provisions of this section, if the judicial officer finds that there is a substantial probability that the person has committed murder in the first degree while armed with or having readily available a pistol, firearm, or imitation firearm, there shall be a rebuttable presumption that no condition or combination of conditions of release will

reasonably assure the safety of any other person or the community.
D.C.Code § 23–1325(a) (1992 Supp.), *as amended by* the Bail Reform Amendment Act of 1992, § 6, 39 D.C.Reg. 2134, 2140 (1992).

5. The conviction had been reversed in *Martin I* because the jury had not had an opportunity to hear certain evidence from Martin's co-defendant Brandon, who was the actual gunman, relating to his possible motive for shooting the decedent. Brandon pleaded guilty at the close of the government's case. Martin then sought to call Brandon as a witness, but he refused to testify until after he was sentenced, invoking his Fifth Amendment privilege. We held that the court should have granted a mistrial, as Martin requested, and continued the trial until after Brandon's sentencing so that Brandon could testify.

6. Section 23–1324(b) authorizes any person who "is detained after . . . [the Superior Court] denies a motion . . . to amend an order imposing conditions of release" to appeal to this court from that denial. "Any order so appealed shall be affirmed if it is supported by the proceedings below."

first of all, that the court could permissibly consider the evidence at the previous trial in deciding the motion. *See* D.C.Code § 23–1322(c)(5) (1989) (information "offered in connection with" any order detaining a defendant before trial "need not conform to the rules pertaining to the admissibility of evidence in a court of law"); *see also United States v. Edwards,* 430 A.2d 1321, 1334 (D.C.1981) (en banc) (information upon which court bases its ruling "need not be sworn testimony"), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). That evidence, even standing alone, would provide sufficient support for the trial court's order.[7] We note also that we are merely reviewing that order, not deciding the issue of release *de novo.* "Our review function does not permit us to make a different decision anew so long as support (a rational basis) exists for the bail order imposed." *Ireland v. United States,* 406 A.2d 1259, 1260 (D.C.1979), citing D.C.Code § 23–1324(b). Appellant Martin has not demonstrated to our satisfaction that the trial court's order lacks a rational basis.

■ We take this occasion to dispel a cloud of uncertainty that has darkened our appellate skies since our recent decision in *Kleinbart v. United States,* 604 A.2d 861 (D.C.1992), which was also an appeal from a pre-trial detention order. In an earlier appeal from another such order, a different division of the court had denied a motion by Kleinbart for summary reversal and had then *sua sponte* granted summary affirmance, even though the government had not moved for it. The *Kleinbart* opinion characterized this action by the earlier division as "a perplexing add-on" and said, in dictum, that an affirmance *sua sponte,* unrequested by the appellee, was "highly unusual and should be reserved for the clearest of situations." *Id.* at 867. Our dissenting colleague, citing this language, maintains that we should treat this as a regular

appeal, albeit "on an expedited track," and that this case cannot "fairly be characterized as compelling enough to meet the *Kleinbart* test." *Post* at 55. For two reasons, we disagree.

First, although the government's response to Martin's motion for summary reversal is captioned as an "opposition" to that motion rather than a motion for summary affirmance, the "opposition" itself in two places (pages 1 and 14) urges us to affirm the trial court's order. We have often said that "[t]he nature of a motion is determined by the relief sought, not by its label or caption." *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 804 (D.C.1984) (citations omitted). Applying this principle, we think it entirely reasonable to treat the government's response as a motion for summary affirmance (since affirmance is "the relief sought"), even though its label—and only its label—says it is an "opposition."

Second and more generally, *Kleinbart* notwithstanding, summary disposition has been the norm in pre-trial release appeals for many years in this court, even when the appellee fails to request it. Both by statute[8] and by court rule,[9] such appeals must be expedited. Moreover, our scope of review is limited, both by section 23–1324 itself and by case law, *see Ireland, supra,* and the issues are usually simple and straightforward. Finally, it is to the advantage of all parties that such an appeal be decided quickly, so that an accused may not languish in jail any longer than necessary if the trial court's ruling turns out to be erroneous. Full briefing and argument in such cases would clearly be the exception, not the rule. *Cf. Coleman v. United States,* 414 A.2d 528, 530 (D.C.1980) (proposing "a summary appellate procedure" in pre-trial double jeopardy appeals).

In this context we see no barrier to summary affirmance on the court's own motion

---

7. The court also noted Martin's "prior criminal history," which included convictions of burglary and of introducing contraband into a penal institution.

8. D.C.Code § 23–1324(b) (1989) (pre-trial release appeals "shall be determined promptly").

9. D.C.Ct.App.R. 4(c) prescribes detailed procedures for several categories of "expedited appeals," which include pre-trial detention appeals and other "bail appeals" under section 23–1324.

in an appropriate case. Even *Kleinbart* acknowledges that "this court presumably does have authority to affirm a pretrial detention order *sua sponte* when ruling on a motion for summary reversal...." 604 A.2d at 867. The test for determining when such action is appropriate is found in *United States v. Ecker*, 156 U.S.App.D.C. 223, 479 F.2d 1206 (1973). The appellant in *Ecker* had appealed from an order denying his application for conditional release from Saint Elizabeths Hospital, where he had been committed after being found not guilty of rape and murder by reason of insanity. He moved in the Court of Appeals for summary reversal, and the government filed an opposition. The court denied the motion and then *sua sponte* summarily affirmed the trial court's order. Chief Judge Bazelon, writing for the court, concluded that summary affirmance was justified for two reasons:

> First ... we are convinced that the standard for summary disposition is met, on this record, by the Government. Second, we see no real prejudice to the rights of appellant in so doing.

*Id.* at 227, 479 F.2d at 1210. Following *Ecker*, we conclude that the government in its "opposition" has met the standard for summary disposition,[10] and that appellant Martin would suffer "no real prejudice" from a summary affirmance instead of a full-blown appeal, with all its built-in delays. We have no quarrel with the notion that a *sua sponte* summary affirmance is "unusual,"[11] but that does not mean that we should shy away from it when it is warranted.

Of course, this whole discussion could have been avoided if the government had put the right caption on its pleading. If the government, without changing a word

of its text, had called the document it filed a "motion for summary affirmance" rather than an "opposition to appellant's motion for summary reversal," this opinion (including the dissent) probably would not even have been written. We trust that in the future the government will be more precise in its labeling.

For the foregoing reasons, the order from which this appeal is taken should be, and hereby is, summarily

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

I cannot agree with the summary affirmance of the order denying reconsideration of Martin's pretrial detention without bond. Now that his conviction has been reversed by this court,[1] Martin is once again presumed innocent of the murder charge. He was acquitted of the weapons charge. He has already been incarcerated for nearly four and a half years in this case.

According to my colleagues, the evidence at the trial, standing alone, supports Martin's preventive detention. To me, this is at best questionable. In the present case, Martin was charged as an aider and abettor; it was concededly codefendant Brandon, not Martin, who shot and killed the decedent. This court's opinion in *Martin I* certainly reveals strong evidence that Martin was, at least, an accessory after the fact (an offense with which he was not charged). There was also evidence, credited by the jury, that Martin had a motive to aid and abet Brandon in the killing, and that he did so. As we pointed out in *Martin I*, however, the jury's ability to assess this evidence was unfairly skewed because the jury never heard evidence that Brandon had a motive for the shooting which did not involve Martin at all.[2]

---

10. *See Oliver T. Carr Management, Inc. v. National Delicatessen, Inc.,* 397 A.2d 914, 915 (D.C. 1979); *In re DeJ.,* 310 A.2d 834, 836 (D.C.1973); *United States v. Allen,* 133 U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969).

11. *See Kleinbart v. United States, supra,* 604 A.2d at 867 ("highly unusual"); *United States v. Ecker, supra,* 156 U.S.App.D.C. at 227, 479 F.2d at 1210 ("somewhat unusual").

1. *See Martin v. United States,* 606 A.2d 120 (D.C. 1991) ("*Martin I*").

2. An impartial jury could reasonably have found the motive applicable only to Brandon—avenging a robbery—more plausible, even on the mean streets of our city, than Martin's alleged motive, namely pique over an obscene insult from the decedent. This is especially true since Martin, a father of four, was in his forties—an age not commonly associated with

In addition, Martin's criminal history, if not ancient, is at least a bit gray at the temples. In September 1984, nearly eight years ago, he was convicted of introducing contraband into prison. In July 1974, more than *eighteen* years ago, he was convicted of burglary in the third degree. The remaining offenses, except for a single disorderly conduct case, were committed in the 1960's. The only crime of violence is a 1966 robbery, now more than a quarter of a century old. Surely the age of Martin's past misdeeds, not mentioned in the majority opinion, is worthy of some consideration. Considering both the evidence at trial and events that occurred many years ago, it is not at all obvious, at least to me,[3] that this record presents "clear and convincing" evidence of dangerousness.

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987). Liberty should especially be treated as the norm where, as here, a defendant has already spent four and a half years under lock and key without the fair trial to which he was entitled.

Moreover, the prosecution has not filed a motion for summary affirmance of the order prolonging his detention without bond.[4] Rather, my colleagues are acting summarily on their own initiative. A division of this court recently commented that *sua sponte* affirmance of a trial court order "is highly unusual and should be reserved for the clearest of situations." *Kleinbart v. United States,* 604 A.2d 861, 867 (D.C.1992). By no stretch of the imagination, in my opinion, can the present case fairly be characterized as compelling enough to meet the *Kleinbart* test.

The issue before us is a difficult one. My quarrel is not with the majority's denial of Martin's motion for summary reversal.[5] Rather, we should treat that motion as his brief on the merits and the government's opposition as the answering brief.[6] We should then proceed with the appeal and, especially in light of Martin's lengthy incarceration, set the case for argument on an expedited track. To do less is to trivialize a potentially meritorious claim and to risk perpetuating an injustice.

Liberty interests as potentially meritorious as those here presented by Martin are too precious to be dealt with cavalierly by a summary disposition which the government did not request. If Martin is acquitted at a second trial at which he can present his defense in full, he will never be able to have his time back. The sickening carnage on the streets notwithstanding, an unwarranted restriction on an individual's liberty always matters, even if that individual may not be very nice.

I respectfully dissent.

---

homicides motivated solely by "dissing," *i.e.,* disrespectful words, gestures, or demeanor.

3. I note that Judge Cushenberry heard no witnesses in making his determination, and that therefore no assessment of demeanor was involved. The trial court's decision was thus made on the basis of information equally available to this court. *See In re Shillaire,* 549 A.2d 336, 342–43 (D.C.1988). Moreover, where preventive detention without bond has been ordered, a basic constitutional liberty interest has been implicated, and more searching appellate review may be warranted. *Cf. Ker v. California,* 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1629–1630, 10 L.Ed.2d 726 (1963); *United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

4. The government's filing in this court is entitled an "Opposition to Appellant's Motion for Summary Reversal of Pretrial Detention Order of June 16, 1992." In its prayer for relief, the government does ask that the order be affirmed, but does not request that this be done summarily. No motion having been filed, Martin has had no opportunity to present arguments relating to the proper standards for summary affirmance.

5. I agree with the majority that many appeals of orders denying pretrial release may and should be dealt with summarily, and that summary affirmance at the government's request may often be appropriate. It is summary affirmance in *this* case which troubles me.

6. The parties should be given a brief period of time to supplement their briefs.